UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:19-CR-80-CHB-HAI |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| JAMES OLIVER JOHNSON, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral from District Judge Boom, considers reported supervised release violations by Defendant James Oliver Johnson. To ease review, the Court summarizes the somewhat unusual posture. At the final hearing, Defendant stipulated that the government could prove by a preponderance of the evidence allegations contained in a factual narrative state authorities used to initiate several criminal charges. Unfortunately, counsel were not prepared to discuss the governing state statutes in detail. To expedite the process, the Court took the stipulation (and agreed upon sentence) under advisement so as to compare the factual narrative to the essential elements of the charges.

That review has yielded some charges that are adequately supported by the facts and some that are not. Additionally, the Court relies upon the lack of any defensive challenge to various nuances of the charges. For instance, various charges depend upon drug quantity and schedule classification. But there appears to be little objective verification of those characteristics by law enforcement in the stipulated to narrative. So, the Court relies on Defendant's stipulation that the government could prove by a preponderance of the evidence that he committed the relevant offenses in finding there to be a factual basis for those charges.

Overall, the factual narrative supports conviction on the most serious charges. In sum, after reviewing the factual narrative and governing statutes, and in reliance upon the positions' of the parties, the undersigned recommends that Defendant be found guilty of a supervised-release violation and that he be sentenced to two years of imprisonment, with no additional supervision, pursuant to the parties' agreement.

## I.   Background

District Judge Jones entered judgment against Defendant on April 9, 2015, in the Western District of Virginia, following a guilty plea to a violation of 18 U.S.C. § 1349, Conspiracy to Commit Bank Fraud, 18 U.S.C. § 661, Theft of Personal Property of Another of a Value Exceeding $1,000, and 18 U.S.C. § 1028A, Aggravated Identity Theft. D.E. 109. Defendant was originally sentenced to thirty-nine months of imprisonment and a 3-year term of supervised release. *Id.* at 2–3.

Defendant was released from custody to begin service of his three-year term of supervised release on December 12, 2017. His supervised release was revoked twice while on supervision in the Western District of Virginia. First, on April 26, 2018, it was revoked for violating the conditions requiring that he not unlawfully possess and use a controlled substance. D.E. 1-4 at 1. He was sentenced to four months on each violation to run concurrently to one another, and a three-year term of supervised release. *Id*. at 2-3. Defendant was released to serve the three-year term of supervised release on June 21, 2018. Second, on January 8, 2019, release was revoked for violations related to his arrest in Middlesboro, Kentucky for terroristic threatening, possession of drug paraphernalia, and tampering with physical evidence. D.E. 1-5 at 1. He was sentenced to serve twelve months on each count to run concurrently to one another, and a two-year term of supervised release. *Id*. at 2-3. Defendant was released to serve his two-year term of supervised release on October 11, 2019, and his supervision was transferred to this District on December 4, 2019.

The following year, Defendant engaged in conduct that again resulted in revocation. On March 8, 2020, Defendant drove under the influence and, once arrested for that drunk driving, failed to inform the USPO about the arrest. Defendant was sentenced to twelve months and one day of imprisonment, and a one year term of supervised release. Defendant was released to begin the new supervised release term on April 20, 2021.

On July 13, 2021, the United States Probation Office ("USPO") issued its Supervised Release Violation Report ("the Report"), later amended, that initiated these proceedings. Defendant was taken into federal custody after having been released from state custody. IA Rec. at 11:30-12:40. The Amended Report charges Defendant with 3 violations stemming from Defendant's drug-related activities. Violation #1 alleges numerous state crimes occurred, including Trafficking in a Controlled Substance in the First Degree, resulting in a Grade A violation.[1] Violation #2 alleges that Defendant failed to report an arrest within 72 hours. This is a Grade B violation. Violation #3 alleges that Defendant committed multiple state crimes, the most serious of which results in a Grade B violation.

II.   Stipulation and Findings

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on August 22, 2023. D.E. 34. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

At the final hearing on August 31, 2023, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 36. Defendant waived a formal hearing and stipulated that the United

---

[1] The initial Report categorized this violation as a Grade B violation. That characterization was erroneous as Trafficking in a Controlled Substance in the First Degree is a Controlled Substance Offense as defined by U.S.S.G. §4B1.2. *See* U.S.S.G. §7B1.1(a)(1). The Report was amended to correct this error.

3

States could prove by a preponderance of the evidence that Defendant had engaged in conduct that gave rise to a subset of the crimes charged within Violation 1. *Id.* To avoid prejudice in pending state cases concerning the same conduct, Defendant stipulated neither that he did, in fact, engage in that conduct, nor that the United States could prove that he engaged in that conduct beyond a reasonable doubt. The Court found Defendant to be competent to stipulate and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's Counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Because a web of state crimes were at issue and neither counsel was prepared to address the nuances of the governing Kentucky statutes, the Court undertakes an independent examination of the stipulated conduct to ensure that the preponderance standard is met and all findings are supported by the record.

The parties agreed to a factual recitation contained in a "Violation of Supervision Report" made by officers with the Kentucky Division of Probation and Parole. Counsel for the government read this recitation into the record and Defendant affirmed it (under the preponderance standard). Based on those facts Defendant intended to stipulate to the following crimes: (1) one count of Fleeing or Evading Police in the Second Degree, K.R.S. § 520.100, (2) one count of Trafficking in a Controlled Substance in the Third Degree, K.R.S. § 218A.1414, (3) one count of Trafficking in Marijuana, K.R.S. § 218A.1421, (4) one count of possessing of drug paraphernalia, K.R.S. § 218A.500, (5) two counts of Trafficking in a Controlled Substance in the First Degree, K.R.S. §

4

218A.1412, and (6) one count of Trafficking in a Controlled Substance in the Second Degree, K.R.S. § 218A.1413. The Court analyzes each criminal statute, in turn, to assess whether the stipulated facts support a finding of a violation.

Frankly, the Court has struggled with this analysis. The hearing firmly established that Johnson knows the nature of the charges, penalties, his procedural rights, and the consequences of his choices. He is a savvy participant, well-versed in the criminal justice system, and acted consistent with the advice of his counsel. If the Court had any doubt whatsoever about his full understanding of the issues and his rights, this analysis might be different. Supervised release determinations include a great deal of evidentiary flexibility. *United States v. Waters*, 158 F.3d 933, 940 (6th Cir. 1998). The difficulty presented is not a function of any aspect of Johnson's choices. Instead, it is a function of a litany of state charges presented without much analysis by counsel. For the most part, that difficulty is driven by the evidentiary record and the Kentucky definition of "trafficking," which includes possession "with intent to manufacture, distribute, dispense, or sell a controlled substance." K.R.S. § 520.100(56). The factual narrative presented, by agreement to the Court, supports some inferences of intent to distribute, but they are vague and imprecise. Given the ample evidentiary flexibility, the Court has endeavored to effectuate the intent of the parties while also ensuring that all findings have a sound evidentiary basis.

First, the Court finds that the stipulation does not support a violation of K.R.S. § 520.100 (Fleeing or Evading Police in the Second Degree). That statute is violated when a pedestrian knowing or wantonly disobeys a direction to stop that is given by a person recognized to be a police officer when the officer has reasonable suspicion to believe that the individual has committed a crime. K.R.S. § 520.100(1)(a). Further, the individual must disobey that order with

5

the intent of fleeing or eluding the officer. Id. Finally, the individual must create a substantial risk of physical injury to a person by fleeing. *Id*.

Kentucky courts have described the risk of physical injury to another person as needing to be ample, considerable in degree or extent, and not imaginary for it to be substantial. *Bell v. Commonwealth*, 122 S.W.3d 490, 497 (Ky. 2003). In *Bell*, the Kentucky Supreme Court held that there was insufficient evidence to convict a defendant of violating K.R.S. § 520.100(1)(a) when all the government had shown was that the defendant had a gun on his person, ran through residential backyards, and climbed over three fences. *Id*. at 492-93. Here, Defendant fled from officers after they began to search his home, and he went through his own backyard before he hopped over a fence. Rec. at 37:58-38:08. Like in *Bell*, that is insufficient to establish a substantial risk of physical injury to any person. Thus, the Court cannot find that Defendant violated K.R.S. § 520.100 by a preponderance of the evidence.

Second, the Court finds that the stipulation supports a violation of K.R.S. § 218A.1414 (Trafficking in a Controlled Substance in the Third Degree). That statute is violated when an individual knowingly and unlawfully traffics in a controlled substance classified in schedules IV or V. K.R.S. § 218A.1414(1). Here, Defendant had various pills in his house. Rec. at 39:48-40:22. Text messages on a phone found in Defendant's residence stated, "come by, I give you one" and "I need to buy some points." Rec. at 38:57-39:05. The stipulated facts support a violation of this statute. In this Court's view, this is barely enough to support a finding of trafficking as charged.

Third, the Court finds that the stipulation supports a violation of K.R.S. § 218A.1421 (Trafficking in Marijuana). An individual violates K.R.S. § 218A.1421 when they knowingly and unlawfully traffic marijuana. The exact penalty under state law is determined according to the

6

amount of marijuana and the number of previous offenses committed by a defendant. Here, officers found a tied-off baggie of Marijuana containing less than 8 ounces of marijuana in it, which the Court finds is sufficient. Rec. at 38:21-39:22. The text messages barely tip the scale in favor of a finding of marijuana trafficking.

Fourth, the Court finds that the stipulation supports a violation of K.R.S. § 218A.500 (possessing drug paraphernalia). An individual violates K.R.S. § 218A.500 when they "use, or … possess with intent to use, drug paraphernalia for the purpose of … packing, repacking, storing, containing, … injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of [K.R.S. Chapter 218A]." K.R.S. § 218A.500(2). Drug paraphernalia is defined as including "all equipment, products and materials of any kind which are used, intended for use, or designed for use in … packaging, repackaging, storing, containing … injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of [K.R.S. Chapter 218A.]" K.R.S. § 218A.500(1). The statute specifically lists hypodermic needles and scales used for weighing or measuring controlled substances as being such objects. K.R.S. § 218A.500(1)(e); K.R.S. § 218A.500(1)(k). Here, officers found (1) hypodermic needles, some loaded with an unknown substance, (2) bags containing marijuana and methamphetamine, and (3) digital scales in Defendant's residence. The stipulation to those facts is sufficient to support a violation of this statute.

Fifth, the Court finds that the stipulation supports a violation of K.R.S. § 218A.1412 (Trafficking in a Controlled Substance in the First Degree) once.[2] An individual traffics in a

---

[2] The Report alleges two violations of K.R.S. § 218A.1412. That seems to be premised on the idea that each transaction a defendant engages in is a separate violation of the statute. But so long as two transactions are within 90 days of each other, a separate criminal offense has not occurred even though two transactions were engaged in. *See* K.R.S. § 218A.1412(2) (implicitly limiting drug exchanges occurring within 90 days of one another to constituting no more than one offense under K.R.S. § 218A.1412). Here, Defendant was released from custody on April 20, 2021, and the incident occurred on June 8, 2021. Because 90 days from April 20, 2021 is July 19, 2021, the Court cannot find that

7

controlled substance in the first degree when they knowingly and unlawfully traffic in, among other specified controlled substances, methamphetamine. K.R.S. § 218A.1412(1)(b); K.R.S. § 218A.1412(1)(e). Here, officers found several bags full of methamphetamine at Defendant's residence. Rec. at 38:22-39:17. Officers also found digital scales and distribution bags in Defendant's residence. Rec. at 38:21-39:22. Defendant tested positive for methamphetamine use. Rec. at 37:00-37:07. The text messages add to the evidence of intent to distribute. This particular trafficking charge is well-supported in the Court's view.

Finally, the Court finds that the stipulation supports a violation of K.R.S. § 218A.1413 (Trafficking in a Controlled Substance in the Second Degree). That statute is violated when an individual knowingly and unlawfully traffics in a Schedule I or II controlled substance that is not (1) a narcotic drug, (2) listed in K.R.S. § 218A.1412, (3) a synthetic drug, (4) salvia, or (5) marijuana. K.R.S. § 218A.1413(1)(a)(1). It is also violated when an individual knowingly and unlawfully traffics in a schedule III controlled substance. K.R.S. § 218A.1413(1)(a)(2). Finally, prescribing, distributing, distributing, supplying, or selling anabolic steroids is prohibited by the statute in certain circumstances. K.R.S. § 218A.1413(1)(b). Here, Defendant had various pills in his house and has stipulated he violated this statute. Rec. at 39:48-40:22. Again, the text messages slightly tip the scale in favor of finding sufficient intent to distribute.

Defendant's stipulation, combined with an independent review of the record, permits the Court to find that Defendant engaged in conduct that is a Grade A violation under the Guidelines, specifically Trafficking in a Controlled Substance in the First Degree, the most serious crime contained within the subset of Violation #1 at issue. *See* U.S.S.G. § 7B1.1(a)(1).

---

the government has introduced sufficient evidence in the record to prove by a preponderance of the evidence that Defendant violated K.R.S. § 218A.1412 twice despite Defendant's stipulation.

8

III.  Sentencing Analysis

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction pursuant to 18 U.S.C. § 1349, Conspiracy to Commit Bank Fraud is a Class B felony. *See* 18 U.S.C. § 1344; 18 U.S.C. § 3559. For a Class B felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is 3 years of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted). The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Under U.S.S.G. § 7B1.1(a), Defendant's underlying stipulated-to conduct qualifies as a Grade A violation. Given Defendant's criminal history category of VI (the category at the time of his conviction in the Western District of Virginia) and a Grade A violation, Defendant's range, under the Revocation Table of Chapter 7, is 33 to 41 months. *See* U.S.S.G. § 7B1.4(a). Both parties agreed to this calculation of the range. Consistent with appellate court guidance, this Court takes the Guidelines-recommended sentence as its starting point and has remained cognizant of it in forming its recommended revocation sentence. *E.g.*, *Molina-Martinez v. United States*, 136 S. Ct. 1338,

9

1345 (2016). As Defendant's underlying conviction is a Grade B felony, his revocation is limited to no more than 36 months. 18 U.S.C. § 3583(e)(3).

Based upon the stipulation to a Grade A violation, the government and defense counsel agreed to 24 months imprisonment followed by no supervised release. The government relied on the non-relatedness of the nature of the violations to the crime of conviction in arguing for a downward departure from the Range, while also emphasizing that 24-months was a substantial prison term. Rec. at 49:39-50:12, 49:00-49:09. The government also drew the Court's attention to Defendant's perceived failure to even attempt to comply with the terms of his supervised release. Rec. at 49:06-49:17. The government also explained that Defendant's stipulation to the government's ability to prove the underlying facts by a preponderance of the evidence, instead of forcing a lengthy and detailed hearing, supported a below-guidelines sentence. Rec. at 49:21-49:34.

Defense counsel pointed out that Defendant will have served a substantial amount of time for supervised release violations after he serves a two-year sentence for these violations. Rec. at 55:08-55:55. Defense counsel further noted that supervised release has failed Defendant. Rec. at 56:08-56:22. Defense counsel also noted that Defendant will very likely remain in custody after he is released from imprisonment due to pending state charges. Rec. at 56:44-56:54. Defendant informed the Court that he was recently offered a deal of 15 years in prison on state persistent felony offender charges. Rec. at 58:55-59:18. Defendant told the Court that he believed he would die in prison because of charges the Commonwealth of Kentucky is currently bringing against him (consisting of all the charged conduct in Violations #1 and #3). Rec. at 59:01-59:08.

The Court has reviewed the entire record, including the Report and its accompanying documents, the Addenda, and Defendant's underlying judgment and sentencing materials. The

10

Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis. Through that consideration, the Court recommends acceptance of the agreed-upon sentence of revocation with a 24-month term of imprisonment and no additional supervised release.

First, the Court considers the nature and circumstances of the underlying offense. Here, the underlying offense was a serious breach of the nation's laws protecting individuals from financial harm. Although the violation conduct is different in kind from his original convictions, Defendant's underlying crimes of conviction are serious. That warrants requiring Defendant's strict compliance with the law and harsh consequences when he fails to do so. Defendant's underlying criminal conviction thus counsels a serious sentence.

The Court next considers Defendant's history and characteristics. Defendant has a long history of law-breaking. He has a history of disregarding the law and not caring about the consequences for doing so. Defendant's past disregard for the law supports a high sentence.

The need to deter criminal conduct, both for Defendant and society, and the need to protect the public from further crimes heavily influence the Court's recommended sentence. After repeated supervised release violations, a lengthy prison term is justified by the need to deter Defendant from breaking the law in the future. Such a sentence also gives notice to society at large that repeated criminal conduct will not be tolerated. Additionally, Defendant's choice to engage in drug trafficking means he poses a substantial danger to society at large, given the large number of drug overdose deaths occurring every year and the violence accompanying the illegal drug trade. This too, supports a lengthy sentence.

The Court must also consider whether a defendant needs any education, training, or treatment. Defendant has severe medical conditions that hamper his physical mobility and well-

being. For example, Defendant requires a walker to get around. Rec. at 1:02:48-1:02:57. Defendant also has Hepatitis C. Rec. at 1:03:04-1:03:07. He is unable to lay on his right side due to injuries sustained by his right hip. Rec. at 1:03:20-1:03:27. Defendant has traumatic brain injuries. Rec. at 1:03:27-1:03:41. Defendant also appears to be addicted to drugs. Rec. at 1:00:39-1:00:47. Defendant asked for a recommended placement at Federal Medical Center (FMC) Lexington, which the undersigned recommends that District Court Judge Boom adopt. These conditions, of course, did not deter him from committing serious violations.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines Range. Yet, in this case, the Court believes a sentence below the Range is appropriate. In such a scenario, the Court must provide a "specific reason" for going outside of the Guidelines range. *See United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (requiring that any deviation from the Guidelines range be supported by a specific reason that justifies the extent of the deviation). Defendant is facing a very length term of imprisonment in the pending state cases. Per his own description, a plea offer of 15 years has been extended to him. He appears to be a target of state law enforcement, for good reason, and this Court senses that the state prosecutions will persist accordingly. Two years is, in this Court's view, the very minimum amount of prison time that is sufficient, but not greater than necessary to address the factors described above.

Finally, the Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the

underlying violation and the criminal history of the violator."). Here, Defendant's widespread violations of his supervised release terms constitute a serious breach of the Court's trust. Defendant's choice to engage in drug trafficking for multiple different controlled substances indicates that he does not care about the trust that the Court had in him to follow the law. His flagrant violations counsel a lengthy term in prison.

In fashioning its recommended sentence, the Court must take into account whether an additional term of supervised release is warranted. Here, Defendant's repeated violations indicate that the precious resources of the USPO would be better used elsewhere as Defendant has repeatedly failed to conform his conduct to the law. Further, both parties agree that supervision has not assisted Defendant to conform his conduct to the law's requirements. In light of the USPO's limited resources and apparent ineffectiveness in assisting Defendant, an additional term of supervised release is not warranted.

IV. Conclusion

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of the specific criminal conduct at issue in Violation #1 addressed above and described by this Court as adequately supported by Defendant's stipulation (specifically: (1) Trafficking in a Controlled Substance in the Third Degree; (2) Trafficking in Marijuana; (3) possessing drug paraphernalia; (4) Trafficking in a Controlled Substance in the First Degree; and (5) Trafficking in a Controlled Substance in the Second Degree);

(2) Revocation and imprisonment for a term of 24 months;

(3) That the 24-month sentence be served at FMC Lexington; and

13

(4) No supervised release.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. D.E. 36 at 2. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Boom's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 14th day of September, 2023.

Signed By:
Hanly A. Ingram
United States Magistrate Judge